## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JODI MCLAUGHLIN**,** on behalf of herself and all others similarly situated, | No. _____ |
|     Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| EVOLVE BANK & TRUST, | |
|     Defendant. | |

Jodi McLaughlin, individually and on behalf of all others similarly situated, files this Class Action Complaint against Evolve Bank & Trust and alleges the following based on personal knowledge of facts pertaining to her and the investigation of counsel as to all other matters:

## NATURE OF THE ACTION

1. Evolve Bank & Trust ("Evolve") is a full-service financial services company that specializes in payment processing solutions and banking. The bank provides a wide range of deposit and loan products for consumers, businesses, institutions, and government entities. These offerings include interest-bearing checking accounts, money market accounts, mortgage solutions, business savings, cash management, online banking, insurance, commercial finance, personal loans, center financing, litigation financing, retirement accounts, and other related banking services. This class action arises out of a recent cyberattack and data breach ("Data Breach") that resulted in the theft and exfiltration by a known cybercriminal organization who illegally obtained and released the personal data of some Evolve retail bank customers and financial technology partners' end users on the dark web, including, at a minimum, name, Social Security Number, date of birth, account information and/or other personal information ("PII").

1

2.      Evolve's business model involves collecting consumers' PII. This information is retained not only to facilitate the delivery of financial services but also to serve Evolve's business interests and generate profits, including the selling and sharing of customers' personal information.

3.      Evolve promises to "protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[1]

4.      But in June 2024, Evolve failed to protect the information of Evolve customers who entrusted it with their PII. Cybercrime group Lockbit 3.0 breached Evolve's computer systems and data, stole the PII of its customers.[2]

5.      Plaintiff is a checking account customer of Dave, Inc. ("Dave"). Dave is a fintech platform for which Evolve provides all banking services, including issuing the Dave debit card.[3] Plaintiff received a notice of breach from Dave, and now brings this class action to hold Evolve accountable for its failure to adequately secure and protect its customers' PII.

6.      By collecting and retaining Plaintiff's and the Class Members' PII for its own financial benefit, Evolve assumed a duty to Plaintiff and the Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Evolve also had a duty to safeguard this PII under applicable case law, industry standards, and statutory obligations, including Section 5 of the Federal Trade Commission Act ("FTC Act").

---

[1] https://www.getevolved.com/wp-content/uploads/2023/03/Evolve-Consumer-Privacy-Policy-Notice-12-22-Final.pdf.
[2] https://www.channelnewsasia.com/business/arkansas-based-evolve-bank-confirms-cyber-attack-and-data-breach-4438766
[3] https://dave.com/

7.      Evolve breached those duties by, among other things, failing to implement and maintain reasonable security procedures and practices to protect the PII in its possession. The Data Breach was directly traceable to Evolve's failure to implement proper security protocols and, among other things, neglecting to implement adequate and reasonable measures to secure consumers' data systems against unauthorized intrusions; withholding disclosure regarding insufficiently robust computer systems and security practices to safeguard PII; omitting standard and reasonably available steps to prevent the Data Breach; and inadequately training its staff and employees on proper security measures. Evolve also neglected proper monitoring of its network, which could have detected the intrusion before the thieves exfiltrated the PII or potentially prevented the intrusion altogether.

8.      Because of Evolve's acts and omissions, Plaintiff's and the Class Members' PII is now in the hands of criminal actors. Plaintiff and the Class Members must diligently monitor their financial accounts to thwart potential identity theft. They will need to bear out-of-pocket expenses for and spend time on credit monitoring, obtaining identity theft protection, retrieving and reviewing credit reports, and taking other protective measures—both now and in the future. Plaintiff and the Class Members have suffered diminished value to their bargain with Evolve, out-of-pocket expenses associated with protecting their privacy and security, and the value of their time spent addressing or mitigating the effects of the attack.

9.      Moreover, Evolve still maintains Plaintiff's and the Class Members' PII. Without additional safeguards and independent review, this information remains susceptible to further cyberattacks and theft.

10.      Plaintiff and members of the Class have suffered irreparable harm, including the exposure of their PII to nefarious strangers and their significantly increased risk of identity theft.

3

The information at issue here is the very kind of information that allows identity thieves to construct false identities and invade all aspects of Plaintiff's and the Class Members' lives. In addition to facing the emotional devastation of having such personal information fall into the wrong hands, Plaintiff and the Class members must now undertake additional security measures and precautions to minimize their risk of identity theft. And the ongoing risk to Plaintiff and the Class Members will persist throughout their lifetimes.

**PARTIES**

11.    Plaintiff Jodi McLaughlin is and at all relevant times has been a citizen of Irwin, Tennessee.

12.    Plaintiff has an account with Dave, Inc. Plaintiff provided her PII to Defendant Evolve in connection with her Dave account.

13.    Plaintiff received a notice from Dave regarding the cyberattack against Evolve. A copy of the notice is attached as **EXHIBIT A.**

14.    Plaintiff is deeply concerned about the Data Breach, as her PII may now be readily available for cybercriminals to sell, buy, or exchange on the Dark Web.

15.    Plaintiff has a continuing interest in ensuring that her PII, which remains in Evolve's possession, is protected and safeguarded from future breaches.

16.    Defendant Evolve is a bank and trust formed under Arkansas law with a principal place of business located at 6070 Poplar Avenue, Memphis, Tennessee 38119.

**JURISDICTION AND VENUE**

17.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and

costs. At least one member of the Class, defined below, is a citizen of a different state than Evolve, and there are more than 100 putative Class members.

18.    This Court has personal jurisdiction over Evolve because its principal place of business is in this District and it regularly transacts business in this District.

19.    Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Evolve's principal place of business is located in this District and a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

**A.    Evolve chooses to collect and keep consumers' PII.**

20.    Evolve provides services including broadband internet, a fiber-optic network, cloud-based services, digital television, and computer technical support to millions of Americans across 25 states.

21.    Founded in 1925, Evolve began as a small bank supporting the development of farming towns in eastern Arkansas. Over the years, Evolve transformed into a national best-in-class financial services institution, combining traditional banking with cutting-edge technology.[4]

22.    Evolve requires customers to provide their PII to facilitate banking services and for its own business purposes. In return, Evolve promises to keep consumers' PII secure and not share it with unauthorized third parties.

23.    Evolve maintains a "Privacy Policy," which states that "Evolve promises to "protect your personal information from unauthorized access and use, we use security measures that comply with federal law."[5]

---

[4] https://www.getevolved.com/about/about-us/about-evolve/
[5] FN 1, *supra.*

24.     The Privacy Policy also contains promises about how Evolve will use the information it collects. Specifically, the Privacy Policy promises that Evolve will share customer information with nonaffiliates, including insurance companies, service providers, co-branded partners, retailers, data processors, membership clubs, companies engaged in selling of consumer products and services, financial services companies, banks, and mortgage servicing companies.

25.     Plaintiff and the Class Members entrusted their PII to Evolve with the reasonable expectation and mutual understanding that Evolve would fulfill its obligations to maintain the confidentiality and security of their information, safeguarding it against unauthorized access.[6]

**B.      Evolve failed to protect consumers' private information**.

26.     Despite Evolve's explicit assurances that it would employ reasonable measures to safeguard consumers' PII and only share that information with expressly authorized individuals, Evolve allowed a cybercrime group to infiltrate its systems and steal the PII of its customers.

27.     On or around June 24, 2024, Evolve detected unauthorized access to some of its internal IT systems. Although Evolve shut down some of its systems, creating an operational disruption, it failed to prevent the threat actor from exfiltrating consumers' personal information, including, reportedly, full names, physical addresses, dates of birth, social security numbers, email addresses, credit scores, and phone numbers. Many customers reported that their internet connection went down during the attack, with support phone numbers playing a prerecorded message instead of redirecting to a human operator.[7]

28.     The "cybercrime group" in question is Lockbit 3.0, a notorious extortion group.[8]

---

[6] *Id.*
[7] https://www.kait8.com/2024/06/28/evolve-bank-confirms-cyber-attack-data-breach/
[8] https://socradar.io/dark-web-profile-lockbit-3-0-ransomware/

29.     Lockbit 3.0 posted data hacked from Evolve on Tuesday June 25, 2024.[9]

30.     Evolve's notice also lacks sufficient details to put consumers on notice of the threats to their privacy. Evolve's notice admits that there was "cybersecurity incident." Plaintiff and the Class Members remain in the dark about the extent of the data breach; the specific data stolen; and the measures, if any, being implemented to safeguard their PII moving forward. Indeed, Evolve's notice did not identify the threat actor—or even that the data was stolen. Plaintiff and the Class Members are left to speculate about the complete ramifications of the Data Breach and the precise strategies Evolve plans to employ to enhance its information security systems and monitoring capabilities in order to avert future breaches.

31.     Evolve has also done next to nothing to repair the damage its negligence caused. Evolve stated that it would provide only two years of credit monitoring services—a woefully inadequate offer since the risks of identity theft persist well beyond that limited time frame and can last a lifetime. Evolve has offered no additional safeguards to shield Plaintiff and the Class Members from the enduring threats now facing them.

32.     Instead, Evolve purports to put the burden of identity protection on Plaintiff and the Class Members by advising them to "please continue to review you Dave account for unauthorized use." Evolve does not offer to compensate Plaintiff or the Class Members for time spent on such activities, although Evolve's own acts and omissions led to the need for such precautions.

**C.      The Data Breach is directly traceable to Evolve's acts and omissions, including its negligence and the breach of its duties to Plaintiff and the Class.**

33.     Evolve is responsible for allowing the Data Breach to occur because it failed to implement and maintain reasonable safeguards, failed to comply with industry-standard data

---

[9] FN 2, *supra.*

security practices, as well as federal and state laws and regulations governing data security, and failed to supervise, monitor, and oversee all third parties it hired who had access to Plaintiff's and the Class members' PII.

34.     During the Data Breach, Evolve failed to adequately monitor its information technology infrastructure. Had Evolve done so, it would have prevented or mitigated the scope and impact of the Data Breach.

35.     By obtaining, collecting, and using Plaintiff's and the Class Members' PII, Evolve assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and the Class Members' PII from disclosure.

36.     Plaintiff's and the Class Members' PII was provided to Evolve with the reasonable expectation and understanding that Evolve would comply with its obligations to keep such information confidential and secure from unauthorized access.

37.     Cyberattacks have become so prevalent that the FBI and U.S. Secret Service have issued warnings to potential targets, urging them to be aware of and prepared for potential attacks.[10]

38.     Evolve's data security obligations were particularly important given the substantial increase in cyber and ransomware attacks and data breaches in the financial services industries preceding the date of the Data Breach, as well as given the incredibly sensitive nature of PII that it retained in its servers.

---

[10] Ben Kochman, FBI, Secret Service Warn of Targeted Ransomware, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974.

**D.      Evolve failed to comply with FTC guidelines.**

39.      The FTC Act, 15 U.S.C. § 45, prohibits Evolve from committing "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has determined that a company's failure to uphold reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

40.      The FTC has issued guidelines for businesses emphasizing the significance of adopting reasonable data security practices. According to the FTC, integrating data security considerations into all aspects of business decision-making is imperative. A

41.      In 2016, the FTC issued an updated version of its publication, "Protecting Personal Information: A Guide for Business," which established cyber-security guidelines for businesses.[11] These guidelines underscored the importance for businesses to safeguard personal customer information, securely dispose of unnecessary personal data, encrypt information stored on computer networks, assess network vulnerabilities, and institute policies to address security issues promptly. Additionally, the guidelines recommend using intrusion detection systems to promptly detect breaches, monitoring incoming traffic for signs of hacking attempts, being vigilant about large data transmissions, and having a response plan prepared in the event of a breach.[12]

42.      The FTC also advises that companies not retain PII longer than necessary for transaction authorization, restrict access to sensitive data, enforce the use of complex passwords on networks, employ industry-tested security methods, monitor the network for suspicious activity, and ensure that third-party service providers have implemented adequate security measures.

---

[11] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[12] *Id.*

43. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice.

44. Evolve failed to properly implement basic data security practices by failing to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

45. Evolve was at all times fully aware of the obligation to protect the PII of customers, as demonstrated by the existence of its Privacy Policy. Evolve was also aware of the significant repercussions that would result from their its failure to do so.

**E.    Evolve failed to comply with industry standards.**

46. Large, prominent companies like Evolve are particularly vulnerable to cyberattacks because of the sensitive nature of the information that they collect and maintain. Because of this vulnerability, and because of the frequency and scale of data breaches in recent years, companies like Evolve that routinely handle and maintain sensitive customer information should, at a minimum, implement industry best practices.

47. These practices include educating and training employees; requiring strong passwords and multi-factor authentication for employees and users; implementing multi-layer security like firewalls, antivirus programs, and anti-malware software; limiting access to sensitive data; backing up and encrypting data; setting up network firewalls; monitoring and limiting network ports; and monitoring and limiting access to physical security systems.

48. Evolve failed to meet the minimum standards of any of the following frameworks laying out industry best practices: the NIST Cybersecurity Framework Version 1.1 (including at a

minimum PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

49.     These frameworks represent the established industry norms for data security, and Evolve's failure to adhere to these widely accepted standards caused the Data Breach and has provided an avenue for criminal exploitation.

**F.      Plaintiff and the Class suffered and face substantial risk of future injuries because Evolve failed to protect their private information.**

50.     As a result of Evolve's failure to implement and adhere to security measures that would have protected their PII, Evolve customer PII is now in the hands of criminals, thieves, and other potentially malicious individuals. Consequently, Plaintiff and the Class Members are at an elevated risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future.

51.     Once PII is exposed, it is nearly impossible to ensure the information is fully recovered or protected from future misuse. Thus, Plaintiffs and the Class Members must now immediately allocate time, energy, and money to: (1) closely monitor their bills, records, and credit and financial accounts; (2) change login and password information on sensitive accounts more frequently; (3) rigorously screen phone calls, emails, and other communications to avoid social engineering or spear phishing attacks; and (4) search for and subscribe to suitable identity theft protection and credit monitoring services. Plaintiffs and the Class Members will need to maintain these heightened protective measures for years, possibly their entire lives, due to Evolve's actions.

52.     Time is a compensable and valuable resource in the United States, and American adults have only 36 to 40 hours of "leisure time" outside of work per week. Usually, this time can be spent at the option of the consumer, but Plaintiff and the Class Members now must spend their leisure time self-monitoring accounts, communicating with financial institutions and credit reporting agencies, contacting government agencies, researching identity protection measures, and implementing self-protection measures that Evolve did not offer.

53.     Plaintiff and the Class members have also lost the inherent value of their PII and the value of their bargain with Evolve.

54.     PII is a valuable property right. Due to its significant value and the prevalence of large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information on various internet websites, making it publicly accessible. Information from multiple breaches, including the Data Breach, can be aggregated, increasing its value to thieves and amplifying the potential harm to victims.

55.     PII can be sold at prices exceeding $1,000.[13] A stolen credit or debit card number can sell for $15 to $110 on the Dark Web.[14] Criminals can also purchase access to entire company data breaches for an average cost of between $2,000 to $4,000.[15]

---

[13] Ryan Smith, *Revealed – How much is Personal information worth on the dark web?*, Insurance News (May 1, 2023), https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx.

[14] Miklos Zoltan, *Dark Web Price Index 2023*, Privacy Affairs (April 23, 2023), https://www.privacyaffairs.com/dark-web-price-index-2023/.

[15] Kaspersky, *Cybercriminals sell access to companies via the Dark Web from $2000* (June 15, 2022), https://www.kaspersky.com/about/press-releases/2022_cybercriminals-sell-access-to-companies-via-the-dark-web-from-2000.

56.     Law-abiding consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[16]

57.     Accordingly, any company that conducts business with a consumer and subsequently compromises the privacy of their PII effectively deprives that consumer of the full monetary value of their transaction with the company.

58.     In sum, due to Evolve's failures, Plaintiffs and the Class Members face a substantial risk of suffering identity theft, fraud, and misuse of their PII, including but not limited to: (a) damage to and diminution in the value of their PII, a form of property that Evolve obtained from Plaintiffs and the Class, and loss of their bargain with Evolve; (b) violation of their privacy rights; and (c) ongoing and increased risk of identity theft and fraud, which they must spend time and money mitigating. They have had personal and sensitive PII including, reportedly, credit scores and social security numbers, exposed to the public, resulting in ongoing emotional pain, mental anguish, and embarrassment.

## **CLASS ACTION ALLEGATIONS**

59.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

60.     Plaintiff brings this action on behalf of herself and the members of the proposed Class, which consists of:

---

[16] Janice Y. Tsai et al., The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study, 22(2) Information Systems Research 254 (June 2011), accessible at https://www.jstor.org/stable/23015560?seq=1.

**All individuals residing in the United States whose personal identifiable information was compromised in the Data Breach.**

61.     Excluded from the Class are Evolve, any entity in which Evolve has a controlling interest, and Evolve's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

62.     Plaintiff reserves the right to amend the above definition or to propose subclasses before the Court determines whether certification is appropriate.

63.     **Numerosity**: The proposed Class is so numerous that joinder of all members is impracticable. Evolve has acknowledged that the number of class members is at least 751,000.

64.     **Typicality**: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Evolve's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Evolve.

65.     **Adequacy**: Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class; Plaintiff has retained competent counsel who are experienced in prosecuting complex class action and data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

66.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. The injury suffered by

14

each individual member of the Class is relatively small in comparison to the burden and expense of individual prosecution of litigation. It would be very difficult for members of the Class to effectively redress Evolve's wrongdoing. Further, individualized litigation presents a potential for inconsistent or contradictory judgments.

67. **Commonality and Predominance**: There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.

68. Among the questions of law and fact common to the Class are:

- Whether Evolve engaged in the wrongful conduct alleged herein;

- Whether Evolve failed to adequately safeguard Plaintiff's and the Class's PII;

- Whether Evolve owed a duty to Plaintiff and the Class to adequately protect their PII, and whether it breached this duty;

- Whether Evolve's conduct, including its failure to act, resulted in or was the proximate cause of the breach;

- Whether Evolve was negligent in permitting unauthorized access to Plaintiff's and the Class's PII;

- Whether Evolve was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

- Whether Evolve failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

15

- Whether Evolve continues to breach duties to Plaintiff and the Class;

- Whether Plaintiff and the Class suffered injury as a proximate result of Evolve's negligent actions or failures to act; and

- Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

69.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

70.     Evolve owed a duty of care to Plaintiff and the Class Members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems, as alleged herein. These common law duties existed because Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices in Evolve's affirmative development and maintenance of its data security systems and its hiring of third-party providers entrusted with accessing, storing, safeguarding, handling, collecting, and/or protecting Plaintiff's and the Class Members' PII. In fact, not only was it foreseeable that Evolve and the Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Evolve also knew that it was more likely than not that Plaintiff and other Class Members would be harmed by such exposure and theft of their PII.

16

71.     Evolve's duties to use reasonable security measures also arose as a result of a special relationship with Plaintiff and the Class Members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiff's and the Class Members' PII was entrusted to Evolve based on the understanding that Evolve would take adequate security precautions. Moreover, Evolve was capable of protecting its network and systems, and the PII it stored on them, from unauthorized access, but failed to do so.

72.     Evolve breached its duties when it failed to use security practices that would protect the PII provided to it by Plaintiff and the Class Members, thus resulting in unauthorized exposure and access to their PII.

73.     Evolve further breached its duties by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiff's and the Class Members' PII within its possession, custody, and control.

74.     As a direct and proximate cause of Evolve's failure to use appropriate security practices and failure to select a third-party provider with adequate data security measures, Plaintiff's and the Class Members' PII was exposed, disseminated, and made available to unauthorized third parties.

75.     Evolve admitted that Plaintiff's and the Class Members' PII was wrongfully disclosed as a result of the Data Breach.

76.     But for Evolve's wrongful and negligent breach of its duties owed to Plaintiff and the Class Members, their PII would not have been compromised.

77.     Neither Plaintiff nor Class members contributed to the Data Breach or subsequent misuse of their PII as described in this Complaint.

78.     The Data Breach caused direct and substantial damages to Plaintiff and the Class Members, as well as the likelihood of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud and identity theft.

79.     As a direct and proximate result of Evolve's negligence, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Evolve, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

### COUNT II
### NEGLIGENCE *PER SE*
### (On behalf of Plaintiff and the Class)

80.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

81.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Evolve of failing to use reasonable measures to protect PII.

82.     Evolve violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Evolve's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach.

83.     Evolve's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

84.     Plaintiff and the Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

85.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of Evolve's failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class Members.

86.     As a direct and proximate result of Evolve's negligence, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Evolve, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and

ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## COUNT III
## BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

87.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

88.     Plaintiff and the Class Members entered into contracts with Evolve when they obtained products or services from Evolve, or otherwise provided PII to Evolve.

89.     As part of these transactions, Evolve agreed to safeguard and protect the PII of Plaintiff and the Class Members.

90.     Evolve expressly promised to Plaintiff and the Class Members that it:

- Would *only* share customers' personal information, including PII, with specified third parties.

- Would protect customers' "personal information from unauthorized access and use," and

- Would "use security measures that comply with federal law."

91.     These promises to Plaintiff and the Class Members formed the basis of the bargain between Plaintiff and the Class Members, on the one hand, and Evolve, on the other.

92.     Plaintiff and the Class Members would not have provided their PII to Evolve had they known that Evolve would not safeguard their PII.

93.     Plaintiff and the Class Members fully performed their obligations under their contracts with Evolve. But Evolve breached its contracts with Plaintiff and the Class Members by failing to safeguard Plaintiff's and the Class Members' PII.

94.     As a direct and proximate result of Evolve's breach of implied contract, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Evolve's Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

### COUNT IV
### *IN THE ALTERNATIVE*—BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

95.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

96.     Plaintiff alleges Count IV in the alternative to Count III.

97.     Plaintiff and the Class Members entered into an implied contract with Evolve when they obtained products or services from Evolve, or otherwise provided PII to Evolve.

21

98.     As part of these transactions, Evolve agreed to safeguard and protect the PII of Plaintiff and the Class Members.

99.     Plaintiff and the Class Members entered into the implied contracts with the reasonable expectation that Evolve's data security practices and policies were reasonable and consistent with legal requirements and industry standards.

100.     Plaintiff and the Class Members would not have provided and entrusted their PII to Evolve in the absence of the implied contract or implied terms between them and Evolve. The safeguarding of the PII of Plaintiff and the Class Members was part of the basis of the parties' bargain.

101.     Plaintiff and the Class Members fully performed their obligations under the implied contracts with Evolve.

102.     Evolve breached their implied contracts with Plaintiff and the Class Members to protect their PII when they (1) failed to take reasonable steps to use safe and secure systems to protect that information; and (2) allowed the theft of that information by unauthorized third parties.

103.     As a direct and proximate result of Evolve's breach of implied contract, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in

response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Evolve's Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

### COUNT V
### *IN THE ALTERNATIVE*—UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

104.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

105.     Plaintiff alleges Count V in the alternative to Count III above.

106.     Plaintiff and the Class Members have an interest, both equitable and legal, in the PII they provided Evolve and that was ultimately stolen in the Data Breach.

107.     Evolve benefitted from receiving Plaintiff's and the Class Members' PII, and by its ability to retain, use, sell, and profit from that information. Evolve accepted and was aware of the benefits conferred upon it by Plaintiff and the Class Members.

108.     Evolve also understood and appreciated that the PII pertaining to Plaintiff and the Class Members was private and confidential and its value depended upon Evolve maintaining the privacy and confidentiality of that PII except as expressly agreed.

109.     But for Evolve's willingness and commitment to maintain its privacy and confidentiality, Plaintiff and the Class Members would not have provided PII to Evolve or would not have permitted Evolve to gather additional PII.

110.     Plaintiff's and the Class Members' PII has an independent value to Evolve. Evolve was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create through the use of Plaintiff's and the Class Members' PII.

111.     Due to Evolve's actions, Evolve unjustly obtained benefits equivalent to the disparity in value between the payments made for services with reasonable data privacy and security measures, and the services received, which lacked such measures.

112.     It is inequitable, unfair, and unjust for Evolve to retain these wrongfully obtained benefits. Evolve's retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

113.     The benefit conferred upon, received, and enjoyed by Evolve was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for Evolve to retain the benefit.

114.     Evolve's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and the Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their PII and has caused the Plaintiff and the Class Members other damages as described herein.

115.     Plaintiff and the Class Members have no adequate remedy at law.

116.     Evolve is therefore liable to Plaintiff and the Class Members for restitution or disgorgement in the amount of the benefit conferred on Evolve as a result of its wrongful conduct, including specifically: the value to Evolve of the PII that was stolen in the Data Breach; the profits Evolve received and is receiving from the use of that information; and the amounts that Evolve overcharged Plaintiff and the Class Members for use of Evolve's products and services.

24

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Evolve as follows:

A.      An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the proposed Class;

B.      For injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.      For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

D.      For an award of restitution or disgorgement, in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED:  July 1, 2024                          Respectfully submitted,

                                            _/s/ Alexandra M. Honeycutt_
                                            Alexandra M. Honeycutt (TN Bar No. 039617)
                                            **MILBERG COLEMAN BRYSON**
                                            **GROSSMAN PLLC**
                                            800 S. Gay Street, Suite 1100
                                            Knoxville, TN 37929
                                            Tel: (865) 247-0080
                                            _ahoneycutt@milberg.com_

Katherine M. Aizpuru (*pro hac vice forthcoming*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
kaizpuru@tzlegal.com

*Counsel for Plaintiff and the Proposed Class*